EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Pascual Toro Vélez<br><br>Peticionario | 2023 TSPR 115<br><br>212 DPR ___ |

Número del Caso: AC-2022-0102

Fecha: 25 de septiembre de 2023

Tribunal de Apelaciones:

    Panel I

Abogado de la parte peticionaria:

    Lcdo. Ramón A. Llorach González

Oficina del Procurador General:

    Hon. Fernando Figueroa Santiago
    Procurador General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcda. Liza M. Delgado González
    Procuradora General Auxiliar

Materia: Sentencia con Opinión de Conformidad y Opinión Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.

                                AC-2022-0102

Pascual Toro Vélez

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 25 de septiembre de 2023.

Por estar igualmente dividido el Tribunal, se dicta sentencia confirmando la sentencia emitida por el Tribunal de Apelaciones.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una Opinión de conformidad, a la que se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió la expresión de conformidad siguiente:

> El Juez Asociado señor Estrella Martínez está conforme con la *Sentencia* que hoy emite este Tribunal por los fundamentos contenidos en su *Opinión concurrente* en *Placer Román v. ELA y otros*, 193 DPR 821 (2015). En específico, por entender que la *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*, Ley Núm. 266 de 2004, según enmendada, 4 LPRA sec. 536 *et seq.*, no exime de inscribirse en el registro a las personas convictas de actos lascivos ausente el elemento de minoridad en la víctima.

El Juez Asociado señor Martínez Torres emitió una Opinión disidente, a la que se unió el Juez Asociado señor Kolthoff Caraballo. La Jueza Presidenta Oronoz Rodríguez disintió y emitió las expresiones siguientes:

El efecto de la Sentencia que este Tribunal, por estar igualmente dividido, dicta hoy, es mantener al Sr. Pascual Toro Vélez (señor Toro Vélez) inscrito en el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores (Registro), a pesar de que, al presente, la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, Ley Núm. 266-2004, 4 LPRA sec. 536 et seq. (Ley Núm. 266), no incluye el delito de actos lascivos, sin el elemento de minoridad, entre las condenas que conllevan la inscripción. Peor aún, se confirma la determinación del Tribunal de Apelaciones de mantener al señor Toro Vélez inscrito en el Registro **de por vida**, cuando al momento en el cual se dictó la sentencia condenatoria en contra del señor Toro Vélez, la Ley Núm. 266, supra, solamente le requería permanecer inscrito por diez años. Por las mismas razones que expuse en mi Opinión disidente en Pueblo v. Ferrer Maldonado, 201 DPR 974 (2019), estoy en desacuerdo con este proceder.

Como esbocé en aquel momento, aun si presumimos que la Asamblea Legislativa no tuvo la intención de aprobar una ley punitiva, lo cierto es que, en su efecto y aplicación, lo es. Al no tratar la referida ley como una penal, sino como una civil, este Tribunal comete el error de no aplicar los principios de favorabilidad y legalidad, y la protección en contra de leyes ex post facto que imperan en el Derecho Penal.

En primer lugar, el señor Toro Vélez argumentó que, posterior a su condena, se aprobaron enmiendas a la Ley Núm. 266, supra, que le resultaban favorables, pues se eliminó el delito de actos lascivos, sin minoridad, de la lista de crímenes que obligan a inscribirle en el Registro. Ante esto, solicitó que decretáramos que las enmiendas posteriores a su condena eran aplicables a su petición de que se le eliminara del Registro. Como es sabido, el Art. 4 del Código Penal de Puerto Rico preceptúa que "[l]a ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito". 33 LPRA sec. 5004. Sobre este principio, hemos expresado que "**ordena** la aplicación retroactiva de leyes penales más

favorables, lo que, a su vez, implica aplicar una ley cuya vigencia es posterior al acto u omisión realizado". (Énfasis suplido). Pueblo v. González Ramos, 165 DPR 675, 685 (2005). Entonces, resulta forzoso concluir que este Tribunal estaba obligado a aplicarle al señor Toro Vélez las enmiendas a la Ley Núm. 266 que eliminaron el delito de actos lascivos, sin el elemento de minoridad, de aquellos que activan la obligación de inscripción en el Registro.

En segundo lugar, el efecto de la Sentencia que hoy se emite es que se continúe permitiendo que "el Estado agrave, retroactivamente, las restricciones a las cuales una persona convicta de un delito sexual está sujeta al ingresar a la libre comunidad. Ello, aun cuando estas restricciones no existían al momento de su enjuiciamiento y convicción". Pueblo v. Ferrer Maldonado, supra, pág. 1000 (J. Oronoz Rodríguez, Opinión disidente). Esto así, pues el dictamen del Tribunal de Apelaciones que se confirma cimentó su análisis en el supuesto de que la Ley Núm. 266 no es de naturaleza penal, sino civil y, por ende, no hay prohibición para aplicarla retroactivamente a pesar de que esto le resulte perjudicial al señor Toro Vélez. De esta manera, el Tribunal de Apelaciones concluyó que no había impedimento en aplicarle el esquema de categorías de Ofensor Sexual Tipo I, II y III que se creó posterior a que el señor Toro Vélez fuese inscrito en el Registro. Esto redundó en que se categorizara al señor Toro Vélez como Ofensor Sexual Tipo III y se ordenara su inscripción en el Registro **de por vida**. Ello, a pesar de que en el momento en que se dictó la sentencia condenatoria en su contra, la Ley Núm. 266 solo requería que el señor Toro Vélez permaneciera en el Registro por diez años. Como advertí previamente, "el resultado de esta actuación es que, aun de probarse que la persona convicta se rehabilitó, o que no representa un peligro para la sociedad, tendrá que cumplir por el resto de su vida con restricciones adicionales ausentes cuando fue convicto y se le impuso la pena". Íd., pág. 1001.

Tercero, nótese que, al categorizar al señor Toro Vélez como un Ofensor Sexual Tipo III, y ordenar su permanencia en el Registro de por vida, también se violenta el principio de legalidad. El dictamen del Tribunal de Apelaciones concluyó que el señor Toro Vélez era un Ofensor Sexual Tipo III por cometer actos lascivos cuando la víctima no

había cumplido dieciséis (16) años de edad, a pesar de que su condena, mediante alegación preacordada, fue por actos lascivos, sin más. Sin embargo, el Tribunal de Apelaciones postuló que la minoridad alegada originalmente por el Ministerio Público, y eliminada para efectos del preacuerdo penal, era susceptible de valoración por parte del tribunal primario en la controversia relacionada con la obligación de inscripción en el Registro. Sin embargo, esta postura ignora la realidad incuestionable de que el Art. 2 de la Ley Núm. 266, supra, indica que las personas que se inscribirán en el Registro son aquellas que resulten **convictas** por los delitos consignados en las tres categorías, sus tentativas o conspiración. Además, la referida ley no contiene disposición alguna que expresamente permita considerar, para efectos de la categorización como ofensor sexual, elementos fácticos que surjan solamente de la acusación original. En efecto, interpretar lo contrario abriría la puerta a la arbitrariedad de parte del Ministerio Público. Así pues, bastaría con que el Ministerio Público acuse a alguien para que se materialice la condición de inscribir en el Registro, aun si luego hay un preacuerdo y, en efecto, nunca se desfila prueba sobre tal elemento. Con relación a esto, el principio de legalidad, el cual surge expresamente del Art. 2 del Código Penal de Puerto Rico, supra, prohíbe que se imponga pena o medida de seguridad alguna que la ley no establezca con anterioridad a los hechos. 33 LPRA sec. 5002. Al respecto, hemos expresado que el principio de legalidad permite "una interpretación restrictiva en cuanto el estatuto penal desfavorezca al acusado, y una liberal en lo que le favorezca". Pueblo v. Ruiz, 159 DPR 194, 212 (2003). Con este principio en mente, sería un error interpretar la Ley Núm. 266 de otro modo. En este caso, estábamos obligados a hacer una interpretación restrictiva del estatuto ante nos y, ciertamente, la ley es clara en que solamente se consideran ofensores sexuales aquellas personas **convictas**, y no meramente acusadas, de cometer los delitos allí enumerados.

Por los fundamentos expuestos, disiento de la Sentencia que emitió este Tribunal, producto del empate en la votación. Debimos alcanzar un consenso y pautar el Derecho, de manera afín a las doctrinas que expuse.

El Juez Asociado señor Colón Pérez disintió e hizo constar las expresiones siguientes:

Si bien formamos parte de la mayoría que suscribió la *Opinión* del Tribunal en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), luego de una profunda reflexión sobre el alcance de lo allí sentenciado, hemos decidido reconsiderar nuestra posición en asuntos como los que hoy nos ocupan y, al así hacerlo, -- al abandonar la teoría de que el *Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores*, 4 LPRA sec. 536-536h, es una disposición legal de carácter civil y proteccionista --, reconocemos la naturaleza penal y punitiva de ésta.

Cónsono con ello, hoy nos vemos en la obligación de disentir del resultado al que se llega en el presente caso, entiéndase que no procede remover el nombre del señor Toro Vélez del referido registro. Y es que la determinación del Tribunal de Apelaciones, -- que hoy se confirma por esta Curia --, parte de lo previamente pautado por este Tribunal en *Pueblo v. Ferrer Maldonado, supra.*

**He aquí el valor de la reconsideración en el derecho procesal civil y penal puertorriqueño. Instrumento que le permite al jurista replantearse el alcance de sus pasadas decisiones, para de este modo poder evaluar si éstas verdaderamente responden y se ajustan, no solo al ordenamiento jurídico vigente, sino también a las realidades políticas, sociales y económicas en que se desenvuelve la norma en determinado momento.**

Realizado ese ejercicio responsablemente, y en lo que a las controversias que subyacen el caso de marras se refiere, no podemos más que reconocer que fallamos cuando en el pasado nos rehusamos a reconocer que, en efecto, el *Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, supra,* -- según ha sido legislado en nuestro país, donde incluso se puede sentenciar a una persona convicta de delito sexual a permanecer en el mismo de por vida, aun cuando esa restricción no hubiese existido al momento de su enjuiciamiento y condena --, a todas luces, se trata de una disposición legal de carácter penal que, en determinados escenarios, pudiese violentar la disposición constitucional que prohíbe la aplicación de *leyes ex post facto*. Hoy, -- en, como mencionamos, una decisión que aparenta estar basada en lo resulto anteriormente en *Pueblo v. Ferrer Maldonado, supra* --, rectificamos dicho proceder. Es por ello que, como ya adelantamos,

respetuosamente disentimos de lo resuelto por esta Curia en el día de hoy.


                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | | |
|---|---|---|
| Recurrido | | |
| v. | AC-2022-0102 | |
| Pascual Toro Vélez | | |
| Peticionario | | |

**Opinión de conformidad emitida por el Juez Asociado señor Rivera García a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón.**

En San Juan, Puerto Rico, a 25 de septiembre de 2023.

La realidad es solo una. En ocasiones, podrá ser revestida y reinterpretada, pero aún así, permanecerá intachable y, sobre todo, indiferente a lo que el humano pueda opinar sobre ella.

El Sr. Pascual Toro Vélez (peticionario) fue convicto por dos (2) cargos de actos lascivos, separados e independientes entre sí. El primero, *porque mediante amenaza de grave daño corporal, besó, tocó los senos e introdujo sus dedos en la vagina de la víctima mientras la obligaba a que ésta le tocara su pene*. El segundo, *porque le tomó la mano a la víctima, la puso en su pene y luego, bajó los pantalones y ropa interior de ésta y le colocó su lengua en la vagina*.[1]

---

[1] Petición de *Certiorari*, Apéndice, págs. 55, 64-65; 112-115.

¿Las víctimas? Dos menores de edad, una niña de seis (6) años y otra de catorce (14). A pesar de lo anterior, y con el seguro fin de que su sentencia de encarcelamiento fuera suspendida, el peticionario alcanzó un preacuerdo con el Ministerio Público para que se eliminara la minoridad como hecho alegado. Esta reconceptualización de la realidad fáctica representa la médula de gran parte del argumento disidente que pretendió despojar de ciertas protecciones a la ciudadanía en general, pero, particularmente, a otros menores de edad contra depredadores sexuales convictos, como lo es el peticionario.

Por estos hechos el señor Toro Vélez es, sin lugar a duda, un ofensor sexual. Como tal, y como la razón nos sugiere, este debe permanecer en el Registro de Ofensores Sexuales (Registro).[2] Sin embargo, algunos compañeros de este Tribunal entienden que una persona que comete tan repugnante delito no tiene que ser incluido en el Registro cuando su víctima sea una "*persona mayor de edad*". Es decir, **que el mecanismo que busca salvaguardar a la sociedad en general** contra actos constitutivos de abuso sexual, **resulta que no es tan proteccionista como se pensaba y que permite despojar de amparo a ciertos miembros de la misma sociedad que pretender resguardar**, aun cuando estos hayan sido víctimas de un delito sexual.

---

[2] Ley Núm. 266-2004, 4 LPRA sec. 536 *et seq*.

La razón para ello, según las voces disidentes, es que la "intención" de la Asamblea Legislativa fue eliminar tal acepción ——*sobre actos lascivos contra adultos*—— de las garantías del Registro y solo proteger a las víctimas menores de edad. Lo anterior, me parece un tanto paradójico cuando conozco que, en efecto, las víctimas fueron menores de edad.

Esta sorprendente conclusión contrasta marcadamente con el propósito legislativo que promueve la propia ley que crea el Registro, Ley Núm. 266-2004,[3] apartándose diametralmente de su fin, objetivo y su naturaleza. Asimismo, la conclusión a la que arribaron los compañeros disidentes tira por la borda el objetivo por el cual se promulgó el *Sex Offender Registration and Notification Act* (SORNA), estatuto federal que gobierna y obliga a toda la Nación en los asuntos de este tipo.

Como si lo anterior no bastara, su raciocinio se aleja palpablemente de la interpretación que las *National Guidelines for Sex Offender Registration and Notification* (Guías Nacionales) le han otorgado a SORNA y la aplicación que toda la Nación le tiene que dar a las provisiones de esta ley.

En *primer* lugar, es indiscutido que el propósito principal de SORNA es **proteger a las comunidades frente a los ofensores sexuales** que merodean nuestras calles y,

---

[3] 4 LPRA sec. 536 *et seq.*

para ello, predicó que su fin era **"fortalecer y aumentar la efectividad de los registros de ofensores sexuales"** a través de **todo Estados Unidos, incluido sus territorios**. Por su parte, la Exposición de Motivos de la ley que creó nuestro Registro, Ley Núm. 266-2004, *supra*, claramente expresa que ha tenido un **objetivo similar**: **"fortalecer y aumentar la efectividad del registro para la seguridad del público"** en aras de **garantizar la seguridad y protección de nuestra sociedad** contra la conducta constitutiva de **abuso sexual**.[4] De hecho, el fin es el mismo y no ha variado desde que se creó el primer Registro en la década del 90.

Entonces, si el objetivo de protección social contra delitos sexuales que provee el Registro no ha variado desde que este se estableció en el 1997, y que sus enmiendas han tenido la intención de fortalecer su misión, cabe preguntarse lo siguiente:

   i. ¿Cuán compatible es el hecho de eliminar el delito de actos lascivos en general, sin minoridad, con la política pública que promueve nuestra legislación en pro del fortalecimiento y la efectividad del Registro?

  ii. ¿Cuán efectivo puede ser un Registro de esta naturaleza, cuando el mismo puede ser burlado fácil y constantemente por ficciones jurídicas ajenas a la

---

[4] Me refiero particularmente a las enmiendas introducidas por la Ley Núm. 243-2011, 4 LPRA sec. 536 *et seq.*

realidad fáctica y motivadas exclusivamente por una negociación sobre la pena?

Bajo la errada percepción disidente, la obligatoriedad en la inscripción sería **para unos sí y para otros no, aunque cometan <u>el mismo delito</u>**. Es decir, si un individuo comete actos lascivos contra un menor sí viene obligado a inscribirse en el Registro, pero si en cambio, lo comete contra un mayor de edad, no tiene que inscribirse.

No debe quedar duda de que las disposiciones que implementó SORNA fueron las que obligaron a la Asamblea Legislativa a enmendar nuestra ley del Registro **<u>para atemperarla a la legislación federal y cumplir con los requisitos mínimos allí dispuestos</u>**. En ese sentido, si SORNA **<u>requiere la inscripción registral de cualquier persona que haya cometido un delito sexual</u>**, ¿Cómo podríamos forzar la conclusión de que nuestra ley eliminó la lascivia cometida en adultos de las protecciones del Registro? Si la propia declaración de política pública de la Ley Núm. 266-2004, *supra,* instituye que "*[a]nte el peligro que representa que la persona convicta por **delitos de esta naturaleza [sexuales]** incurra nuevamente en esa conducta […] **es necesario establecer un Registro** en el que se anote su dirección y que contenga información sobre su persona*",[5] ¿Acaso no es el delito de actos lascivo,

---

[5] 4 LPRA sec. 536 *et seq*.

independiente de la naturaleza de las circunstancias de la víctima, un delito de naturaleza sexual?

Por otra parte, las Guías Nacionales que mencioné anteriormente reconocen que **todas** las jurisdicciones tienen que inscribir **a todos aquellos que cometan delitos que tengan como elemento constitutivo un acto o conducta sexual**, independientemente de la edad de la víctima, y, **además, proveen para que se tomen en consideración los hechos que, en efecto, ocurrieron, independientemente de lo que se haya expresado en la acusación**.

En fin, como explicaré a continuación, soy del criterio de que las enmiendas introducidas por la Ley Núm. 243-2011,[6] particularmente en cuanto a los conceptos de Ofensor Sexual Tipo I, II y III, **no eliminaron el delito de actos lascivos cometido en contra de un adulto de la lista de delitos que obligan a una persona convicta a inscribirse en el Registro**.

Asimismo, entiendo que, como la Ley 266-2004, *supra*, es estrictamente una de carácter civil, los tribunales primarios vienen obligados **a sopesar la realidad fáctica** sobre cualquier actuación de mayor pertinencia en el ámbito criminal, como lo son las alegaciones preacordadas, **en aras de cumplir con el objetivo del Registro**. Si bien el ingreso a éste requiere alguna convicción penal, tal como sentenció el foro *a quo*, **"el despliegue de sus**

---

[6] Íd.

disposiciones, **no queda estrictamente delimitado por las particularidades del proceso penal**, incluido lo relacionado con alegaciones preacordadas dirigidas a afectar la sanción penal, **si las circunstancias anejas al caso revelan *elementos subyacentes que resulten pertinentes bajo la ley [del Registro]***". Esta interpretación es cónsona con el propósito del Registro y con la interpretación que las Guías Nacionales y múltiples tribunales de Distrito y Circuito han adoptado. No puede ser de otra forma, pues resolver lo contrario equivaldría a una derrota total e inmisericorde de los fines del Registro de Ofensores Sexuales.

Consecuentemente, estoy conforme con la determinación de que el Sr. Pascual Toro Vélez debe permanecer inscrito en el Registro de Ofensores Sexuales. Así, pues, procedo con los fundamentos jurídicos que informan mi criterio.

**I**

Previo a sustentar mi tesis de conformidad, entiendo pertinente enmarcar un brevísimo recuento fáctico sobre el Registro y su propósito.

El Registro de Ofensores Sexuales de Puerto Rico nació en el 1997 con la aprobación de la Ley Núm. 28-1997,[7] con el objetivo de proteger a la ciudadanía y a las víctimas de delitos sexuales, pues, se entendía necesario conocer el paradero de aquellas personas que habían sido

---

[7] 4 LPRA ant. sec. 535 *et seq.*

convictas de delitos de índole sexual. Esto permitía que tanto la comunidad, como las agencias de orden público, conocieran e identificaran a este tipo de personas para que se levantara la voz de alertar cuando ello fuese necesario en aras de garantizar la seguridad pública.[8] Entre los delitos enumerados, se encontraba el delito de actos lascivos o impúdicos.

Este estatuto fue derogado por la aún vigente Ley Núm. 266-2004, *supra*, conocida como la *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores*. Similar a su predecesora, esta ley comparte el mismo fin protector hacia la comunidad en general y hacia las víctimas de delitos sexuales. De igual forma, tipificaba el delito de actos lascivos, como uno de los que obligaba la registración.

Eventualmente, la Asamblea Legislativa aprobó la Ley Núm. 243-2011, con el fin de enmendar distintos aspectos de la Ley Núm. 266-2004, *supra*, y **con el propósito de atemperar el Registro** a las disposiciones de la ley federal intitulada *Adam Walsh Child Protection and Safety Act of 2006*, la cual contiene en el Título I el *Sex Offender Registration and Notification Act* (SORNA), Ley Pub. Núm. 109-248, 27 de julio de 2006, 120 Stat. 587.[9]

La legislación federal aludida sirvió para establecer

---

[8] Véase, Exposición de Motivos y Art. 1 de la Ley Núm. 28-1997, 4 LPRA sec. 531.
[9] Véase, Exposición de Motivos de la Ley Núm. 243-2011, *supra*.

una serie de **guías y criterios mínimos de cumplimiento** para los Registros y que, de paso, fuesen **extensivos** a todos los estados y territorios de la nación norteamericana. De hecho, como complemento a lo anterior, el Departamento de Justicia Federal emitió lo que se conoce como el *National Guidelines for Sex Offender Registration and Notification* (Guías Nacionales)[10], las cuales sirven de base para el análisis y la interpretación de las disposiciones estatuidas en SORNA.

Así, pues, mediante las enmiendas introducidas por la Ley Núm. 243-2011, y acorde con el interés de adaptar el Registro a lo dispuesto en SORNA, nuestra Legislatura adoptó, entre otras cosas, los conceptos de Ofensor Sexual Tipo I, II y III. Ahora bien, a pesar de las enmiendas introducidas a esta ley, el propósito original **nunca ha variado y la intención legislativa se ha mantenido firme en proteger a todos los sectores de la sociedad de delitos sexuales**. Así se hizo constar en la Exposición de Motivos de la Ley Núm. 243-2011, *supra*, al mencionar que su objetivo es "fortalecer y aumentar la efectividad del registro para la seguridad del público". En ningún momento, la intención legislativa ha sido despojar de protección a las personas que fueron víctimas de delitos sexuales y que no son clasificadas como menores de edad, sino todo lo contrario.

---

[10] *Federal Register* Vol. 73, No. 128- (2008). 73 Fed. Reg. 38,053

**II.**

*i.* ***Toda persona que cometa el delito de actos lascivos,
    independientemente de que su víctima sea mayor o menor
    de edad, tiene la obligación de inscribirse en el
    Registro.***

   ***a. Delito Sexual***

   La posición disidente sentencia que como el delito de
actos lascivos cometido contra un adulto no se encuentra
consignado dentro de ninguna de las clases tipificadas en
la Ley Núm. 266-2004, *supra,* sobre Ofensor Sexual Tipo I,
II o III, procede la eliminación del peticionario del
Registro. Respetuosamente, tengo que distanciarme de tal
parecer.

   En primer lugar, cónsono con la política pública y la
intención legislativa de proteger a la comunidad en
general contra actos constitutivos de carácter sexual, el
Art. 2 de la Ley Núm. 243-2011,[11] reconoce el concepto de
*Delito Sexual* como todo aquel "<u>**que tenga como elemento
constitutivo un acto sexual o conducta sexual con otra
persona**</u>". Como vemos, el texto claro de la legislación
reconoce que este tipo de delitos incluye a <u>**cualquier
persona que no sea menor de edad, siempre y cuando el
sujeto activo realice acciones dirigidas a lacerar la
indemnidad sexual de la víctima**</u>.

   Así, debemos preguntarnos: *¿es el delito de actos
lascivos uno de carácter sexual?* No hay duda de eso. De
acuerdo con el Art. 133 del Código Penal, este delito se

---

[11] 4 LPRA sec. 536(3).

define como aquel que comete toda persona que a propósito, con conocimiento o temerariamente, sin intentar consumar el delito de agresión sexual, **someta a otra persona a un acto que tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado.**[12]

Como vemos, es claro que el delito de actos lascivos, indiscutiblemente, es de naturaleza sexual y puede ser cometido contra adultos, pues su comisión no se circunscribe únicamente a que la víctima sea menor de edad.

En sintonía con lo anterior, no es correcto refugiar la argumentación limitándose únicamente a lo que establece el Art. 3 de la Ley Núm. 243-2011,[13] sobre los Ofensores Sexuales Tipo I, II y III. Lo que parece obviar el peticionario, así como los compañeros disidentes, es que, además de esas tres (3) clases, **el artículo requiere la inscripción de varias otras categorías**, entre los que destaco las siguientes:

i. **Las personas que hayan sido o sean convictas por delitos similares**, a los de esta Ley <u>por un tribunal federal, estatal, extranjero o militar, y que se hayan trasladado a Puerto Rico</u> para establecer su residencia, por estudios o trabajo.

ii. **Las personas que tenían la obligación de registrarse bajo la Ley 28-1997**, *supra*. (*Es decir, aquellos que resultaron convictos por*

---

[12] 33 LPRA sec. 5194.
[13] 4 LPRA sec. 536a.

*__actos lascivos o impúdicos de acuerdo con el__*
*__Art. 105 del derogado Código Penal de 1974,__*
*__cuyos elementos son idénticos a los del cuerpo__*
*__penal vigente.__*)

Así, pues, podemos colegir que las personas obligadas a registrarse no son únicamente aquellas comprendidas bajo la categoría de Ofensores Sexuales Tipo I, II y III.

Entonces, *¿bajo qué razonamiento lógico se podría concluir que la intención del legislador fue eliminar el delito de actos lascivos contra un adulto de las protecciones del Registro?* Basado en la naturaleza y espíritu de la legislación, la anterior interrogante no encuentra una respuesta lógica. Por el contrario, genera varias interrogantes, como, por ejemplo:

    i. Si el Registro **obliga la inscripción de individuos que cometieron actos lascivos bajo la anterior ley, ¿por qué razón o motivo lo suprime bajo las enmiendas del 2011?** ¿Acaso no se introdujeron dichas enmiendas para hacer un Registro más robusto y provechoso?

    ii. Si la intención de las enmiendas introducidas por la Ley Núm. 243-2011, *supra*, **fue atemperar el Registro a los requerimientos de SORNA, los cuales, a su vez, tuvieron como fin fortalecer y aumentar la efectividad de los registros de ofensores sexuales a través de la nación** y eliminar cualquier laguna que surgiera de estos, **¿Cómo entonces se puede justificar que la "intención" del legislador fue eliminar el delito de actos lascivos contra un adulto de la ley del Registro? ¿Esto fortalece o debilita la protección del Registro?**

    iii. Si el Registro **obliga la inscripción** de individuos que **cometieron *actos "similares"* en Estados Unidos,** ——los cuales obviamente no están tipificados bajo las categorías I, II y III de nuestra ley——, **¿bajo cuál categoría se registraría entonces? ¿Acaso habría que hacer un acto de "adivinanza" o "analogía" como el que**

> **condena la posición disidente, o procedería estudiar los hechos que, en efecto, provocaron la convicción?**

Acoger los planteamientos del peticionario y la disidencia provocaría una innecesaria disparidad en cuanto a las personas que se tienen que registrar. Disparidad que no surge expresamente de ninguna expresión legislativa, sino de una interpretación judicial restrictiva y alejada del propósito legislativo del Registro.

Por otro lado, tampoco podemos ser ingenuos y pretender que nuestra Asamblea Legislativa decidió añadir los delitos de *Espectáculos obscenos* o *Proposición Obscena* ——*el cual de hecho está derogado*—— y por los cuales no se ha procesado a nadie al menos en los pasados cuatro (4) años, pero que decidió eliminar el delito de actos lascivos, el cual representa **un total de 1,576 casos radicados** dentro del mismo periodo de tiempo.[14] Nuevamente, tal acepción no tiene lógica ni razonamiento práctico alguno y está basada en un ejercicio distanciado del propósito de la ley del Registro. Así, no puedo estar de acuerdo con que la intención legislativa fue eliminar el delito de actos lascivos cometido contra un adulto de las protecciones del Registro.

b. ***El delito sexual de actos lascivos comprendido dentro de los requisitos mínimos de SORNA***

El análisis de la controversia en materia debe, a su

---

[14] Portal cibernético de estadísticas del Negociado de la Policía de Puerto Rico.

vez, examinar las disposiciones de las categorías de ofensores sexuales, en conjunto con el propósito legislativo de la medida que gobierna el asunto. Por ejemplo, el Ofensor Sexual Tipo III es definido como sigue:

> **Ofensor Sexual Tipo III**. — Personas que resulten convictas por los siguientes delitos o su tentativa:
>
> **(i)** Violación; seducción; sodomía; actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99, 101, 103, 105, 122, 137-A (a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada
>
> **(ii)** Agresión Sexual, según comprendido en los Artículos 142(a), 142(b), 142(c), 142(d), 142(e) o 142(g) de Ley 149-2004, según enmendada.
>
> **(iii)** Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad; secuestro de menores; secuestro agravado cuando la víctima fuere menor de dieciocho (18) años, según comprendidos en los Artículos 134, 144 y 170(a) de la Ley 149-2004, según enmendada.
>
> **(iv)** Un Ofensor Sexual Tipo II convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual.
>
> (v) Cualquier delito antecedente o sucesor de los mencionados en los sub-incisos (i), (ii) y (iii).

Esta categoría menciona diferentes delitos que dan paso a la inscripción registral. De una lectura somera observamos que, particularmente, menciona el delito de actos lascivos, aunque lo condiciona a que la víctima no haya cumplido los dieciséis (16) o trece (13) años. Si detenemos la lectura ahí y nos abstraemos de la realidad fáctica y del propósito legislativo de la medida, tal vez, pudiéramos llegar a la conclusión que toman los compañeros

disidentes en el día de hoy. **No obstante, el análisis requiere más de nuestra parte.**

Como mencioné anteriormente, el propósito cardinal del estatuto federal SORNA, el cual nuestra legislatura utilizó como cuerpo rector para enmendar la ley del Registro, es prácticamente idéntico al nuestro; proteger a la ciudadanía de los convictos de delitos sexuales y de aquéllos que abusan contra menores mediante el establecimiento del requisito de inscripción cuando el convicto se reintegre a la libre comunidad. Asimismo, uno de los objetivos de esta legislación es obtener uniformidad en los registros de ofensores sexuales a través de toda la nación norteamericana.[15] Para cumplir con este propósito, establece un cuerpo de **reglas mínimas** que obligan a todas las jurisdicciones.

SORNA creó tres (3) clases o "tiers" en los que engloba los tipos de delitos que dan paso a una inscripción en el registro de ofensores sexuales. Bajo el estándar mínimo de esta ley, el *Ofensor Sexual Tipo I* es, para todos los efectos, una cláusula residual en la que entra, todo aquel depredador sexual que no esté comprendido dentro de las otras dos (2) clasificaciones. Así, establece que "*The term 'tier I sex offender' means a sex offender other than a tier II or tier III sex*

---

[15] Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, https://smart.ojp.gov/sorna/current-law (*SORNA aims to close potential gaps and loopholes that existed under prior laws, and to strengthen the nationwide network of sex offender registrations.*)

*offender."* Por su parte, la categoría de *Ofensor Sexual Tipo II* va dirigido contra delitos cometidos contra menores, mientras que la categoría de *Ofensor Sexual Tipo III*, aunque también menciona conductas penales cometidas contra menores de edad, tiene varias disposiciones dirigidas a las víctimas adultas cuando la naturaleza del delito es agravada.

En atención a esto, el acápite (5) de SORNA detalla, entre otras cosas, lo siguiente:

> AMIE ZYLA EXPANSION OF SEX OFFENSE DEFINITION.
> (A) GENERALLY— Except as limited by subparagraph
> (B) or (C), the term "sex offense" means:
>
> **(i) a criminal offense that has an element involving a sexual act or sexual contact with another;**
>
> .   .   .   .   .   .   .   .

Como se aprecia, esta definición básicamente establece que si la conducta realizada por sus implicaciones no cae dentro de los otros dos grupos, <u>**se puede registrar siempre y cuando cumpla con la condición de que sea una ofensa que tiene *elementos que envuelven actos o contactos sexuales con la víctima*, independientemente de la edad que tenga esta**</u>.

El razonamiento para incluir ese lenguaje es sencillo y nos lo brindan la *National Guidelines for Sex Offender Registration and Notification*: las clasificaciones delictivas que activan la inscripción obligatoria del registro **están basadas en la sustancia del acto, no en la**

**forma o terminología** que se les da a estas.[16] En particular, las guías mencionan que

> "to implement the **SORNA requirements,** jurisdictions do not have to label their sex offenders as ''tier I,'' ''tier II,'' and ''tier III,''[…] the SORNA requirements are met so long as **sex offenders who satisfy the SORNA criteria for placement in a particular tier are consistently subject to at least the duration of registration** […]. Likewise, **any other approach a jurisdiction may devise is acceptable if it ensures that sex offenders satisfying the criteria for each SORNA tier** are subject to duration of registration, appearance frequency, and website disclosure requirements that meet or exceed those SORNA requires for the tier."

Ahora bien, con relación al delito que generó la controversia en este caso, las Guías Nacionales resaltan que el "tier I" incluye a aquellos "**sex offenders whose registration offense is a sexual assault against an adult that involves sexual contact but not a completed or attempted sexual act**.[17] He aquí una definición extremadamente similar a la que nuestro Código Penal le otorga al delito de actos lascivos.

Entonces, **si los requerimientos de SORNA** ──*los cuales representan el mínimo de cumplimiento al momento de implementar leyes estatales sobre el Registro*── **contemplan la lascivia y los actos derivados de esta como meritorios para entrar al Registro, ¿cómo entonces se puede justificar que el delito de actos lascivos contra un adulto no está cobijado bajo nuestro Registro**? Solo una

---

[16] *Federal Register* Vol. 73, No. 128 (2008). 73 Fed. Reg. 38,053

[17] Íd.

decisión apartada de la naturaleza del Registro podría concluir de tal forma.

En la pág. 26 de la *Opinión disidente*, el compañero Juez Asociado Martínez Torres sentencia que "*si bien SORNA establece el estándar que los estados y territorios de Estados Unidos deben seguir en cuanto al tema del Registro, <u>la ley federal brinda discreción en la forma en que las jurisdicciones lo implementan</u>*". Lo que parece obviar la Opinión del compañero es que la discreción que se le brinda a los Estados y territorios va dirigida exclusivamente a **ampliar las disposiciones de SORNA, <u>no a restringirlas ni limitarlas</u>**. Como bien categorizan las Guías Nacionales, los estándares mínimos de SORNA "[set] a floor, not a ceiling" para las jurisdicciones. Solo para brindar un ejemplo sencillo de esto, las propias guías de interpretación mencionan que "*a state may have a registration system **<u>that covers broader classes of offenders</u>** than those identified in the Act*".[18] La expresión habla por sí sola, la restricción no forma parte del análisis brindado por las Guías.

**Los requerimientos que allí se establecen equivalen al mínimo estatutario que tienen que garantizar y respetar todas las jurisdicciones de Estados Unidos.** O sea, no hay discreción para lo opuesto. En ese sentido, si las propias Guías Nacionales establecen que el mínimo que requiere SORNA para clasificación *Tipo I* admite la inclusión

---

[18] *Federal Register* Vol. 73, No. 128- (2008). 73 Fed. Reg. 38,033.

registral de ofensores sobre actos lascivos contra adultos, es totalmente entendible que la jurisdicción de Puerto Rico **tiene** que atender tal ofensa como una que conlleva la inscripción. Ese razonamiento representa, el mínimo exigido por SORNA y aceptar menos iría en contra de la naturaleza de este mecanismo. Tan es así que las propias Guías Nacionales reconocen que las disposiciones de SORNA le aplican a todo ofensor sexual, con lo que esta definición represente en cada jurisdicción. ("SORNA's requirements apply to anyone who 'was convicted of a sex offense.'")[19]. Lo que sí puede quedar a discreción de las jurisdicciones es la **ampliación** de las garantías mínimas de SORNA, como, por ejemplo, el tiempo de duración en el registro, controles de verificación más constantes, entre otros.[20]

Por otro lado, es una realidad que el mecanismo del Registro es uno de carácter civil que no alberga un fin punitivo,[21] por lo que, para poder cumplir con la intención legislativa, **es imperante que se tomen en consideración los hechos y las realidades fácticas del caso**. Solo así se puede cumplir con el propósito del Registro y se pueden evitar las ficciones jurídicas que

---

[19] *Federal Register* Vol. 73, No. 128- (2008). 73 Fed. Reg. 38,040.
[20] De hecho, las guías proveen para que se amplíen las disposiciones mínimas requiriendo que se registren "certain classes of non-convicts (such as persons acquitted on the ground of insanity of sexually violent crimes or child molestation offenses or persons released following civil commitment as sexually dangerous persons)".
[21] *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019); *Pueblo v. Hernández García*, 186 DPR 656 (2012);

operan en contra del mismo. A fin de cuentas, esa fue una de las razones principales por las que el Congreso aprobó SORNA.

### c. Consideración y peso de la realidad fáctica

En el presente caso existe una sola realidad, y esta es que las víctimas de este depredador sexual fueron dos (2) menores de edad, una de seis (6) años y otra de catorce (14), quienes actuaron bajo intimidación de grave daño corporal.

De los hechos que dieron paso a la acusación, lo único que se eliminó fue que las víctimas eran menores de edad, todo lo demás permaneció igual.[22] De esta forma, la eliminación de tal realidad en el preacuerdo hecho con el Ministerio Público representó una limitación única y exclusivamente para propósitos del pronunciamiento de sentencia en la causa penal. En otras palabras, el preacuerdo con la Fiscalía solo tuvo el efecto de presentar al foro judicial una estipulación entre las partes en la cual el acusado aceptaba su responsabilidad penal, a cambio de un mejor trato **para fines de la pena**. En nada esto se puede extrapolar a la esfera civil y socialmente protectora que gobierna al Registro de Ofensores Sexual. Por ello, la minoridad alegada

---

[22] Estamos dando por cierto lo que se ha manifestado en todos los foros inferiores y por las partes, pues no contamos con las acusaciones enmendadas ya que el peticionario no las incluyó en su recurso. Tampoco contamos con el preacuerdo alcanzado, solo constan las minutas de los procedimientos.

originalmente por el Ministerio Público, y eliminada solo para efectos del preacuerdo penal, era susceptible de valoración por parte del tribunal primario, tal cual lo hizo.

Este acercamiento **no es ajeno a las disposiciones de SORNA según lo explican las *Guías Nacionales***. Sobre este particular, las guías de interpretación disponen que

> [W]here the tier classification depends on commission of an offense against a victim who is below a certain age, **the requirement to give weight to this factor (victim age) is not limited to cases involving convictions for offenses whose elements specify that the victim must be below that age. Rather, the requirement applies as well in cases in which the offender is convicted of a more generally defined offense that may be committed against victims of varying ages, *if the victim was in fact below the relevant age***.

La interpretación va más allá y menciona como un ejemplo lo siguiente:

> "For example, in a case in which the sex offender was convicted of a generally defined ''sexual contact'' offense, *whose elements include no specification as to victim age*, **tier II treatment is required if the victim was *in fact* below 18 (SORNA § 111(3)(A)(iv)), and tier III treatment is required if the victim was *in fact* below 13 (SORNA § 111(4)(A)(ii))**".[23]

Como vemos, la realidad fáctica del asunto es un hecho que se tiene que ponderar y tomar en consideración, independientemente de que el delito por el cual se procesó y sentenció no haya imputado directamente la minoridad como uno de sus elementos, siempre que éste sea parte

---

[23] *Federal Register* Vol. 73, No. 128 (2008). 73 Fed. Reg. 38,053

integral de los hechos que, en efecto, generaron el delito.

Este acercamiento ha sido avalado por múltiples foros federales. United States v. Dodge, 597 F.3d 1347, 1355 (11th Cir. 2010) ("***Courts may employ a noncategorical approach to examine the underlying facts of a defendant's offense, to determine whether a defendant has committed a "specified offense against a minor" and is thus a "sex offender" subject to SORNA's registration requirement***.")("*Congress intended the courts to also consider the actual age of the victim by looking to the specific circumstances of the defendant's crime*."); United States v. Mi Kyung Byun, 539 F.3d 982, 992 (9th Cir. 2008)("*[T]he list of specified offenses against a minor includes '[a]ny conduct that by its nature is a sex offense against a minor,' § 16911(7)(I) (emphasis added),* **suggesting again that for the category of "specified offense[s] against a minor," *it is the underlying "conduct," not the elements of the crime of conviction, that matter*.**"); United States v. White, 782 F.3d 1118, 1134 (10th Cir. 2015) ("*Congress intended courts to apply a categorical approach to sex offender tier classifications designated by reference to a specific federal criminal statute,* ***but to employ a circumstance-specific comparison for the limited purpose of determining the victim's age***."); United States v. Rogers, 804 F.3d 1233, 1237 (7th Cir. 2015) ("***Whether the exception applies***

_**depends on the underlying facts and circumstances […]**_")(_We conclude that the threshold definition of "sex offense" found in § 16911(5)(A)(i) requires a categorical approach—an inquiry limited to the elements of the offense—but the exception in subsection (5)(C) **calls for an examination of the specific facts of the offense conduct**_"); United States v. Berry, 814 F.3d 192, 197 (4th Cir. 2016) ("_Congress's decision to reference in SORNA a victim "who has not attained the age of 13 years," 42 U.S.C. § 16911(4)(A)(ii), **must therefore be read as an instruction to courts to consider the specific circumstance of a victim's age, rather than simply applying the categorical approach**_".)

Así, pues, al examinar las circunstancias específicas del delito cometido y los elementos subyacentes de la conducta del peticionario, observamos varios detalles que sobresaltan relacionado a su preacuerdo: (i) sus víctimas fueron dos jóvenes menores de dieciséis (16) años, (ii) que se solicitó eliminar la minoridad no por haber un error de persona, sino para poder cualificar a una sentencia suspendida (iii), que los foros inferiores concedieron el acuerdo condicionado, entre otras cosas, a que no se acercara a menores de edad y no se acercara a las víctimas, —_víctimas que aunque la disidencia las quiera invisibilizar por la alegación seguían siendo, en efecto, menores de edad_— y (iv) que se inscribiera en el Registro. Lo anterior son circunstancias específicas y

subyacentes que surgen de las sentencias de los foros inferiores y de los trámites que tuvieron ante su consideración los magistrados de instancia. No eran circunstancias ajenas y como tal, eran susceptibles de valoración. Así, debería clasificarse como un Ofensor Sexual tipo III, máxime cuando **fue un reincidente**.

El interés que tiene el Estado en garantizar la seguridad, protección y bienestar general no puede estar limitado por las ventajas administrativas que el mecanismo de alegaciones preacordadas le pueda brindar tanto al Ministerio Público como al Poder Judicial. El primero representa uno de los ejes básicos del poder estatal para cumplir y hacer cumplir las leyes, particularmente las que protegen a los miembros más vulnerables del colectivo. El otro, sin menospreciar su utilidad, no pasa de representar una herramienta facilitadora para agilizar la labor del Ministerio Público y la carga administrativa de los foros judiciales.

Y es que no puede ser de otra forma si deseamos hacer valer la Ley del Registro y cumplir con su fin protector. Recordemos que tal como hemos interpretado en múltiples ocasiones anteriores, la ley que crea el Registro no es un estatuto de carácter penal y mucho menos punitivo. Es una creación civil que le permite al Estado promover la seguridad ciudadana frente a cualquier incomodidad o estigma que un ofensor sexual pueda sufrir. En este contexto, protege aún más a los niños y niñas de Puerto

Rico, cuyo desarrollo integral debe ser resguardado infatigablemente.

No debemos olvidar que las alegaciones preacordadas persiguen proteger el interés legítimo del Estado y del ciudadano hacia una administración justa y eficiente de la justicia criminal, salvaguardando los derechos de todas las partes.[24] Si bien el peticionario fue favorecido al hacer alegación de culpabilidad, pues se le concedió el beneficio de sentencia suspendida, el Tribunal de Primera Instancia, en la discreción judicial que viene obligado a ejercer al atender este tipo de procedimientos abreviados, condicionó el cumplimiento de la sentencia a que el peticionario se inscribiera en el registro y, además, a que no se acercara ni relacionara con personas menores de edad. Esta condición responde a un propósito exclusivo, salvaguardar el propósito de la Ley del Registro, de manera que se garantice el bienestar de la sociedad ante la posibilidad de actos reincidentes de ofensores sexuales como el señor Toro Velez.

En fin, las implicaciones que pudiera tener avalar la conclusión del ala disidente van más allá de simplemente excluir a un adulto que cometió determinados actos sexuales contra "otro adulto". Resulta que, como sucedió en este caso, todas las personas que cometan tan horrendo acto contra un menor de edad, podrían burlar las provisiones del

---

[24] *Pueblo v. Figueroa García*, 129 DPR 798, 804 (1992).

Registro de Ofensores Sexuales con el simple hecho de aceptar un preacuerdo en el que se elimine la minoridad con tal de beneficiarse de una sentencia suspendida y, consecuentemente, evadir la obligación de inscripción. El efecto práctico de ello se resume de la forma siguiente: (1) convierte en letra muerta las disposiciones del Registro y (2) fomenta la inseguridad en nuestras comunidades que quedarán desprovistas de información alguna con relación a ofensores sexuales, haciendo que la reincidencia sea una posibilidad latente y asequible.

**Hoy, descargo mi deber hacia la justicia y levanto mi voz para advertir los efectos nocivos de la práctica procesal ilustrada en casos como este**. El bienestar social de nuestra Isla hubiese preferido que otros se sumaran a este entendimiento, máxime, cuando lo que recibimos por parte de los foros noticiosos son múltiples reportajes sobre los constantes abusos sexuales y atrocidades lujuriosas que se cometen contra nuestros niños.

Por estimar que el señor Toro Vélez debe permanecer inscrito en el Registro de Ofensores Sexuales por el resto de su vida, firmemente emito esta Opinión de conformidad.


                                        Edgardo Rivera García
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                       AC-2022-0102

Pascual Toro Vélez

    Peticionario

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES, a la que se unió el Juez Asociado señor KOLTHOFF CARABALLO.

En San Juan, Puerto Rico, a 25 de septiembre de 2023.

En esta ocasión nos correspondía interpretar la Ley Núm. 266-2004, según enmendada, _infra_, que regula el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, conocido como el Registro de Ofensores Sexuales. Estábamos llamados a dilucidar si una acusación penal es suficiente para generar una obligación de inscripción en el Registro de Ofensores Sexuales. Del mismo modo, debíamos evaluar si una convicción por el delito de actos lascivos sin minoridad exige la inscripción en el mencionado Registro.

De un análisis sosegado del esquema registral instituido por la Asamblea Legislativa, es evidente

que la Ley Núm. 266-2004 requiere que haya una convicción —por determinados delitos— para que se genere el deber de inscripción. Una acusación o denuncia es insuficiente. En segundo lugar, el crimen de actos lascivos, sin más, no es uno de los delitos que el estatuto reconoce para exigir la inscripción del convicto en el Registro.

Como esa no fue la determinación a la que hoy arribó esta Curia, disiento respetuosamente.

I

El recurso ante nos tiene su origen en dos resoluciones emitidas por el Tribunal de Primera Instancia con relación al Sr. Pascual Toro Vélez (Peticionario). La primera de ellas fue emitida por la Sala Superior de Mayagüez el 19 de abril de 2022. La segunda, por la Sala Superior de Ponce el 19 de julio de 2022.

Por su pertinencia, y en beneficio de la mejor comprensión de esta controversia, detallaremos ambos procedimientos por separado.

A. *Tracto ante el Tribunal de Primera Instancia en Mayagüez*

En noviembre de 2006 se presentó una denuncia en la que se alegó que el señor Toro Vélez cometió el delito de actos lascivos contra una menor de seis años. Posteriormente, tras la vista preliminar, se formalizó la acusación al respecto.

Así las cosas, el juicio se celebró el 3 de julio de 2007. Ese día, con la anuencia de la madre de la menor y como resultado de una alegación preacordada, se solicitó al

Tribunal de Primera Instancia que eliminara el elemento de minoridad a cambio de que el señor Toro Vélez se declarara culpable del delito de actos lascivos, sin más. El foro primario estuvo de acuerdo y, tras enmendar la acusación, emitió fallo de culpabilidad por el Art. 105 del Código Penal de 1974, 33 LPRA sec. 4067, sin la alegación de minoridad.

En consecuencia, condenó a Toro Vélez a cuatro años de cárcel, bajo el régimen de sentencia suspendida (Primera Condena). Además, dispuso que el convicto debía ser inscrito en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores de la Ley Núm. 266-2004, <u>infra</u>.

Años después, en marzo de 2022, el señor Toro Vélez presentó una *Moción urgente solicitando eliminación del Registro de Ofensores Sexuales* ante el foro primario en Mayagüez. En síntesis, alegó que la Ley Núm. 243-2011, <u>infra</u>, no requiere que los condenados por el delito de actos lascivos, sin el elemento de minoridad, formen parte del mencionado Registro.

Por su parte, el Ministerio Público se opuso. Sostuvo que el delito de actos lascivos sin minoridad está clasificado como uno Tipo II, y que no había trascurrido el término para la eliminación del Registro de los delitos con tal clasificación.

Tras evaluar las posturas de ambas partes, el Tribunal de Primera Instancia declaró no ha lugar a la moción. El foro primario entendió que el señor Toro Vélez debía ser considerado como un Ofensor Sexual Tipo III, por su

convicción por el delito de actos lascivos (sin minoridad). Conforme a ello, resolvió que debía permanecer en el Registro de Ofensores Sexuales de por vida.

Inconforme, el señor Toro Vélez solicitó reconsideración, pero fue denegada. Por esto, el peticionario acudió al Tribunal de Apelaciones mediante un recurso de *certiorari* (KLCE202200733). Allí planteó que el Tribual de Primera Instancia erró al denegar la eliminación de sus datos del Registro bajo el pretexto que el delito cometido cuenta con una clasificación Tipo III, aun cuando los actos lascivos sin minoridad no están contemplados dentro de las clasificaciones establecidas por la Ley Núm. 243-2011.

### B. Tracto ante el Tribunal de Primera Instancia en Ponce

Por otra parte, en octubre de 2006, un mes antes de la presentación de la denuncia que desembocó en la Primera Condena, el señor Toro Vélez fue imputado de cometer el delito de actos lascivos contra una víctima menor de 14 años. Posteriormente, se presentó la correspondiente acusación.

Al comienzo del juicio se solicitó al Tribunal de Primera Instancia que aceptara la alegación preacordada de culpabilidad por el delito de actos lascivos, sin más. El foro primario estuvo de acuerdo, razón por la cual aceptó la declaración de culpabilidad del peticionario por el delito de actos lascivos, sin la alegación de minoridad, bajo el Art. 105 del Código Penal de 1974, <u>supra</u>. Por consiguiente, condenó al señor Toro Vélez a cuatro años de cárcel, bajo

sentencia suspendida (Segunda Condena), a cumplirse de forma consecutiva con la Primera Condena. De igual manera, cónsono con la ley entonces vigente, requirió el registro del convicto como ofensor sexual.

Luego de varios años, en marzo de 2022, el peticionario presentó una *Moción urgente solicitando eliminación del Registro de Ofensores Sexuales* ante el foro primario en Ponce. Igual que con la Primera Condena, planteó que actualmente no se requiere que los condenados por el delito de actos lascivos (sin minoridad) ingresen al Registro. Nuevamente el Ministerio Público se opuso.

El Tribunal de Primera Instancia, mediante resolución, denegó la moción bajo el fundamento de que el señor Toro Vélez debía ser considerado como un Ofensor Sexual Tipo II. Entendió que la eliminación de la minoridad como parte de la alegación preacordada en nada cambiaba la realidad fáctica del caso. Por tal razón, dispuso que el señor Toro Vélez debía permanecer en el Registro hasta agosto de 2036; o sea, hasta 25 años después de que comenzó a transcurrir la Segunda Condena.

Inconforme, el señor Toro Vélez presentó un recurso de *certiorari* ante el Tribunal de Apelaciones (KLCE202200929). En dicho recurso sostuvo que se debían eliminar sus datos del Registro, toda vez que los actos lascivos sin minoridad no están tipificados dentro de las clasificaciones establecidas por la Ley Núm. 243-2011, <u>infra</u>.

**C. Tracto ante el Tribunal de Apelaciones**

El 29 de agosto de 2022, el Tribunal de Apelaciones emitió una resolución en la que ordenó la consolidación de los mencionados recursos KLCE202200733 y KLCE202200929. Posteriormente, el foro apelativo emitió una sentencia por medio de la cual decretó que el señor Toro Vélez debía permanecer inscrito en el Registro por toda su vida, dado que era un Ofensor Sexual Tipo III.

El Tribunal de Apelaciones sustentó su determinación en que las acusaciones presentadas contra el peticionario contemplaban el elemento de minoridad antes de ser enmendadas a consecuencia de la alegación preacordada. Razonó que las alegaciones de culpabilidad registradas no tuvieron el efecto de constituir una declaración de adultez con relevancia u obligatoriedad jurídica frente a cualquier caso civil futuro. Sin embargo, el foro apelativo sí determinó que los actos lascivos sin minoridad quedan fuera de los delitos que requieren registración al amparo de las enmiendas realizadas a la Ley 266 en 2011, infra.

Insatisfecho, el señor Toro Vélez solicitó reconsideración. Por su parte, el Ministerio Público se opuso. La postura del Procurador General fue que el delito de actos lascivos, sin más, sí está incluido dentro de los delitos en los que la Ley 243-2011, infra, exige registración. Aunque manifestó estar en desacuerdo con que el deber de registrar al señor Toro Vélez surgía de lo alegado en la acusación original, consideró que la ley no requiere el elemento de la minoridad como condición para

permanecer en el Registro. De ese modo, estuvo de acuerdo con no remover el nombre del peticionario del Registro.

Tras evaluar ambos reclamos, el foro intermedio denegó la reconsideración. Insatisfecho, el peticionario presentó el recurso ante nuestra consideración, por medio del cual señaló el siguiente error:

> **Erró el Honorable Tribunal de Apelaciones al resolver que la acusación por el delito de actos lascivos originalmente presentada por el Ministerio Público es suficiente para generar una obligación ante el Registro de Ofensores Sexuales, como delito enumerado y clasificado Tipo III, a pesar [de] que la persona resultó convicta por el delito sin el elemento de minoridad, luego de una alegación preacordada.**

Después de evaluar detenidamente el asunto, estimo que al señor Toro Vélez le asiste la razón. Por esto, debíamos ordenar la eliminación de sus datos del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores.

II

El Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores se creó en Puerto Rico por medio de la Ley Núm. 28-1997. Esta legislación se aprobó con el propósito de acatar lo dispuesto por la ley federal Jacob Watterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 USC secs. 14071 *et seq.* (conocida comúnmente como Megan's Law). A través de este estatuto, el Congreso de los Estados Unidos le requirió a sus estados y territorios adoptar legislaciones que obliguen a las personas convictas por ciertos delitos de naturaleza sexual y de abuso contra menores de edad a inscribirse en un

registro público que los identifique como tal. Exposición de Motivos, Ley Núm. 28-1997 (1997 [Parte 1] Leyes de Puerto Rico 141)[1].

En la actualidad, la Ley Núm. 266-2004, conocida como la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, rige este tema en Puerto Rico. 4 LPRA sec. 536 *et seq*. Esta ley ha sido enmendada en tres ocasiones. Una de estas enmiendas se dio por medio de la Ley Núm. 243-2011, _infra_, para atemperar nuestra legislación a las nuevas exigencias adoptadas por la Ley federal Adam Walsh Child Protection and Safety Act of 2006, también conocida como Sex Offender Registration and Notification Act (SORNA), 42 USC secs. 16901 *et seq*. SORNA constituyó una revisión completa de los estándares federales para el registro y la notificación de personas convictas por ciertos delitos de naturaleza sexual, cuyo resultado fue una serie de obligaciones mínimas que los estados y territorios de Estados Unidos deben velar. Exposición de Motivos de la Ley Núm. 243-2011, 2011 [Parte 3] Leyes de Puerto Rico 2787; _Pueblo v. Hernández García_, _supra_, pág. 669.

Entre las nuevas disposiciones establecidas, y en lo pertinente al caso de autos, se aclara cuáles personas tendrán la obligación de registrarse. Para esto, la Ley crea tres categorías de lo que se considerará un "ofensor sexual"

---

[1] Para un análisis abarcador sobre la creación del Registro, la motivación tras su instauración y su desarrollo histórico, véase nuestra Opinión en _Pueblo v. Hernández García_, _infra_.

para efectos del Registro, cuya inscripción será mandatoria. Estas categorías clasifican a los ofensores sexuales de acuerdo con el delito sexual cometido y su grado de severidad.

Por su relevancia, procedemos a citar las 3 categorías *in extenso*, tal cual contenidas en el Art. 2 de la Ley Núm. 266-2004, 4 LPRA sec. 536, según enmendada:

> (8) *Ofensor Sexual Tipo I*.-Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración, cuando se incurre en conducta constitutiva de abuso sexual:
>
>> (a) Restricción de la libertad, cuando la víctima fuere menor de dieciocho (18) años, según comprendido en la sec. 4796(e) del Título 33.
>> (b) Restricción de libertad agravada, cuando la víctima fuere menor de dieciséis (16) años, según comprendido en el Artículo 131(e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.
>> (c) Delito de maltrato a menores, según establecido en los Artículos 75 y 76 de la Ley 177-2003, cuando se incurre en conducta constitutiva de abuso sexual.
>> (d) Maltrato agravado conyugal, cuando se cometiere y simultáneamente se incurriere en conducta constitutiva de abuso sexual, en maltrato de un menor, según definido en la Ley 177-2003, según comprendido en la sec. 632(g) del Título 8.
>> (e) Envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno; Espectáculos obscenos; Exposiciones deshonestas cuando el acto tuviere lugar en presencia de una persona menor de 16 años, según establecido en los Artículos 106, 113 y 114 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y en las secs. 4783 y 4784 del Título 33.

(f) Exposiciones obscenas; Proposición obscena, según tipificados en las secs. 4775 y 4776 del Título 33.

(g) Cualquier delito antecedente o sucesor de los mencionados en las cláusulas (a), (b), (c), (d), (e) o (f) de este inciso.

(9) *Ofensor Sexual Tipo II.*-Personas que resulten convictas por los siguientes delitos o su tentativa o conspiración **cuando la víctima fuere un menor de edad:**

(a) **Actos lascivos** o impúdicos; proxenetismo o comercio de personas; delitos contra la protección de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía, comprendidos en los Artículos 105, 110(a) y (c), 111(a) y 115 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada.

(b) **Actos lascivos,** proxenetismo, rufianismo y comercio de personas; producción de pornografía infantil; posesión y distribución de pornografía infantil; utilización de un menor para pornografía infantil; corrupción de menores cuando se admitiere o retuviere a un menor en una casa de prostitución o de comercio de sodomía, comprendidos en las secs. 4765(e), 4772, 4781(a), 4785, 4785 y 4787 del Título 33.

(c) Agresión sexual, comprendida en los incisos (f), (h), (i) de la sec. 4770 del Título 33.

(d) Un Ofensor Sexual Tipo I convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual o su tentativa o conspiración.

(e) Cualquier delito o su tentativa antecedente o sucesor de los mencionados en las cláusulas (a), (b) o (c) de este inciso.

(10) *Ofensor Sexual Tipo III.*-Que resulten convictas por los siguientes delitos o su tentativa:

(a) Violación; seducción; sodomía; **actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años**; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99, 101, 103, 105, 122, 137-A(a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y agresión sexual conyugal, según tipificada en la sec. 635 del Título 8.

(b) Agresión Sexual, según comprendido en los incisos (a), (b), (c), (d), (e) o (g) de la sec. 4770 del Título 33.

(c) **Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad**; secuestro de menores; secuestro agravado cuando la víctima fuere menor de dieciocho (18) años, según comprendidos en las secs. 4762, 4772 y 4798(a) del Título 33.

(d) Un Ofensor Sexual Tipo II convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual.

(e) Cualquier delito antecedente o sucesor de los mencionados en las cláusulas (a), (b) y (c) de este inciso. (Negrillas suplidas).

Según estas clasificaciones, los Ofensores Sexuales Tipo I, los Ofensores Sexuales Tipo II y los Ofensores Sexuales Tipo III serán inscritos en el Registro. Art. 3 de la Ley Núm. 266-2004, 4 LPRA sec. 536a. Del mismo modo, se establece que un Ofensor Sexual Tipo I debe permanecer en el Registro por un término de 15 años; el Ofensor Sexual Tipo II por 25 años, y el Ofensor Sexual Tipo III debe permanecer de por vida. Art. 5 de la Ley Núm. 266-20044, LPRA sec. 536c. Estos términos empezarán a contar desde que el ofensor sexual

sea excarcelado o, en los casos del disfrute de los beneficios de libertad a prueba, libertad bajo palabra o participación de un programa de desvío, tratamiento o rehabilitación, desde que se emite la sentencia, resolución o determinación para participar en dichos programas y se notifique su inclusión al Registro. Íd.

De otra parte, la ley enmendada dispone que, salvo los incisos (f) y (g) del Art. 4, "[l]as demás disposiciones podrán tener efecto retroactivo". Art. 15 de la Ley Núm. 243-2011, 4 LPRA sec. 536. Los incisos exceptuados (f) y (g) establecen la prohibición que tienen las personas inscritas en el Registro de establecer su residencia a 500 pies de una escuela o cuido de niños y la obligación de la agencia concernida de notificar al ofensor sexual con relación a esa prohibición. Art. 4 de la Ley Núm. 266-2004, 4 LPRA sec. 536b.

Este Tribunal ha tenido la oportunidad de analizar la Ley Núm. 266-2004, según enmendada, en varias ocasiones. Por ejemplo, en Pueblo v. Hernández García, supra, el ofensor resultó convicto, tras una alegación de culpabilidad, por un delito que, conforme a las enmiendas introducidas por la Ley Núm. 243-2011, no requería la inscripción registral. Además, para cuando este solicitó la eliminación de su información en el Registro, ya había cumplido su condena de libertad a prueba y el caso había sido sobreseído por el foro primario. En tales circunstancias, resolvimos que procedía eliminar la

información del peticionario dado que ya no se requería su inscripción, según la ley vigente. Íd., págs. 680-681.

Por otra parte, en Placer Román v. ELA y otros, 193 DPR 821 (2015) (Sentencia), se expidió el recurso de *mandamus* presentado por el peticionario y se eliminó su nombre del Registro. Las opiniones de conformidad y la opinión concurrente emitidas por varios miembros de este Tribunal coincidieron en que al ofensor no le aplicaban nuevos términos sobre cuánto tiempo debía permanecer en el Registro, según las enmiendas recientes a la ley, porque cuando dichas enmiendas entraron en vigor, ya habían transcurrido los diez años de inscripción que imponía la antigua Ley Núm. 128-1997, supra, según la cual se originó su obligación de registrarse. Véase, Placer Román v. ELA y otros, supra, pág. 838 (Op. de conformidad, Jueza Presidenta señora Fiol Matta); págs. 840-841 (Op. de conformidad, Juez Asociado señor Martínez Torres); págs. 860-861 (Op. concurrente, Juez Asociado señor Estrella Martínez).

Este era el derecho que debíamos aplicar para resolver la controversia.

                                III

En el recurso ante nuestra consideración, el señor Toro Vélez alega que, debido a las enmiendas introducidas por la Ley Núm. 243-2011, su deber de inscripción cesó, toda vez que se eliminó el delito de actos lascivos sin minoridad de los crímenes que obligan a inscribirle en el Registro. Le asiste la razón.

Como vimos, el peticionario fue convicto mediante una alegación preacordada por dos cargos de actos lascivos, sin el elemento de minoridad en ambas instancias. En 2007, al momento de sentenciarle, se dispuso que debía inscribirse en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, según requería el ordenamiento jurídico en aquel entonces. Para ese tiempo, la Ley Núm. 266-2004 disponía:

> Se crea un Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores en el Sistema de Información de Justicia Criminal. Serán registradas en el mismo:
> (a) **las personas que resulten convictas por alguno de los siguientes delitos o su tentativa**: violación, seducción, sodomía, **actos lascivos** o impúdicos; proxenetismo, rufianismo […]. (Negrillas suplidas). (2004 Leyes de Puerto Rico 2015). 4 LPRA ant. sec. 536a (ed. 2010).

Como se puede apreciar, cuando se sentenció al señor Toro Vélez la ley incluía a los actos lascivos como uno de los delitos cuya convicción justificaba su inscripción en el Registro, sin considerar la presencia o ausencia del elemento de minoridad. Por esta razón, en un principio, la inscripción del peticionario en el Registro se realizó conforme a derecho. Sin embargo, **a raíz de las mencionadas enmiendas realizadas en 2011, el delito de actos lascivos, sin más, ya no figura entre las infracciones para las que se exige inscripción.**

La primera clasificación, denominada "Ofensor Sexual Tipo I", cuyo término de inscripción es de 15 años, **no incluye el delito de actos lascivos**. La segunda, denominada

"Ofensor Sexual Tipo II", tiene un término de inscripción de 25 años e incluye la convicción por el delito de **actos lascivos con minoridad.** La tercera y última categoría, "Ofensor Sexual Tipo III", obliga a la inscripción de por vida e incluye la convicción por el delito de **actos lascivos con minoridad, pero cuando el menor no ha cumplido los 16 años en ciertas instancias o los 13 años en otras.**

En el caso ante nos, al señor Toro Vélez se le acusó en un principio por cometer actos lascivos contra dos menores de edad. No obstante, en un ejercicio legítimo de una negociación con antelación a juicio, con el consentimiento del Ministerio Público y con la anuencia del foro primario, se modificaron las acusaciones para eliminar el elemento de minoridad a cambio de unas alegaciones de culpabilidad preacordadas. Es decir, las acusaciones originales nunca fueron objeto de prueba, confrontación o autenticación ante el foro primario.

Por medio de las alegaciones preacordadas el aquí peticionario resultó convicto de actos lascivos **sin minoridad.** De esta manera, el factor de la minoridad no podía ser considerado al momento de resolver la solicitud aquí en controversia, pues las consecuencias jurídicas, sean penales o civiles, corresponden a la infracción por la que la persona resultó condenada. Por consiguiente, el nombre del señor Toro Vélez debía ser retirado del Registro, ya que su delito no cae dentro de las categorías de ofensores que establece la ley vigente actualmente.

En cambio, el foro intermedio razonó que, para propósitos de la inscripción, lo determinante era la realidad extrajudicial, en lugar de la judicial. Basándose en un desacertado análisis que se enfocó **en lo imputado y no en la convicción**, o sea en una acusación que se modificó posteriormente, el tribunal apelativo concluyó que el señor Toro Vélez era un ofensor sexual tipo III y debía permanecer registrado de por vida. Hoy concluyo que el Tribunal de Apelaciones **erró** al resolver que la acusación originalmente presentada por el Ministerio Público es suficiente para generar una obligación ante el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores.

Resolver lo contrario, como pretende la *Opinión de conformidad* emitida por el Juez Asociado señor Rivera García, conllevaría una crasa violación del reconocido derecho a un debido proceso de ley. Esto es así porque el Art. 2 de la propia Ley Núm. 266-2004, según enmendada, <u>supra</u>, establece que las personas que se inscribirán en el Registro son aquellas que resulten **"convictas"** por los delitos consignados en las tres categorías, sus tentativas o conspiración.

En Puerto Rico el deber de registro nace con el delito por el cual se encuentra culpable, sin distinción sobre si la convicción se originó mediante una alegación preacordada, de parte o luego de un juicio en su fondo. En ningún lugar se afirma que se podrá inscribir a una persona en el Registro a base de lo que se haya alegado en la denuncia o acusación,

mucho menos en una acusación que fue sustituida. No debemos olvidar que las acusaciones sólo son documentos con los cuales se comienza el trámite procesal penal que imputa la comisión de un posible delito. Rivera Beltrán v. J.L.B.P., 169 DPR 903, 906-907 (2007) (Sentencia); Rabell Martínez v. Tribunal Superior, 102 DPR 39, 42 (1974). Por eso, una vez enmendada la acusación y aceptada la alegación de culpa, **recae la sentencia y sus consecuencias** sobre la exclusiva determinación judicial, **basada en las disposiciones legales del delito por el cual el Tribunal encuentra convicto**. Véase, Pueblo v. Torres Cruz, 194 DPR 53 (2015); Rivera Beltrán v. J.L.B.P., supra.

De ningún modo podemos obviar ni menospreciar los grandes beneficios que las alegaciones de culpabilidad tienen para nuestro sistema de justicia criminal. Pueblo v. Acosta Pérez, 190 DPR 823, 834 (2014). Y es que cuando un acusado se declara culpable, el Estado no solo queda relevado de celebrar un procedimiento criminal que puede ser extenso y costoso, sino que también alivia los cargados calendarios de los tribunales y permite que los imputados puedan ser enjuiciados dentro de los términos requeridos por el ordenamiento procesal penal. Pueblo v. Santiago Agricourt, 147 DPR 179, 194 (1998). Del otro lado, un acusado que formula una alegación de culpabilidad abdica totalmente los derechos constitucionales o estatutarios que lo protegen, entre los que se encuentran: el derecho a que se establezca su culpabilidad en cada elemento más allá de duda razonable;

el derecho a un juicio justo, imparcial y público; el derecho a ser juzgado ante un juez o jurado; el derecho a presentar evidencia a su favor y a rebatir la prueba presentada en su contra, entre otros. Íd., pág. 192. Empero, el acusado realiza esta renuncia por el compromiso de obtener cierta concesión de parte del Ministerio Público, que en muchas ocasiones significa el ser sentenciado por un delito de menor severidad. Por ello, cuando el acuerdo es aceptado por el tribunal, las partes quedan vinculadas por lo pactado y deben cumplir con lo estipulado. Pueblo v. Pérez Adorno, 178 DPR 946, 957 (2010).

Ante esta realidad, el Estado no puede pretender beneficiarse de la obtención de una alegación preacordada de culpabilidad por un delito diferente al denunciado y, al mismo tiempo, procurar que las consecuencias de tal convicción sean producto de lo originalmente plasmado en la acusación. O sea, sería como si la alegación no se hubiera materializado y como si al acusado se le hubiera brindado un juicio plenario en donde el Ministerio Público pasó prueba y, más allá de duda razonable, un jurado o un juez lo encontró culpable por el delito inicialmente imputado. **De ahí la importancia de recordarle a los fiscales que deben tener muy en cuenta que cualquier acuerdo de culpabilidad al que arriben ha de tener repercusiones prácticas en la sentencia y en los corolarios que dicha convicción acarree. Uno de estos corolarios es, por supuesto, la inscripción o no en el Registro de Ofensores Sexuales.**

Por ende, la decisión del foro apelativo de basarse en las acusaciones hechas al señor Toro Vélez para determinar su permanencia en el Registro, en lugar de utilizar las sentencias emitidas, con todas las garantías y salvaguardas del debido proceso de ley que ello implica, es improcedente en derecho. Como vimos, aunque en un principio el peticionario fue acusado de cometer actos lascivos frente a un menor de edad, lo cierto es que los cargos fueron reclasificados a actos lascivos sin más, eliminándole el elemento de minoridad. Por esa razón, ese elemento no debe ser considerado al momento de imponerle la sentencia ni ninguna otra condición que surja a raíz de la convicción, como, en este caso, la inscripción en el Registro de Ofensores Sexuales.

Sin embargo, la *Opinión de conformidad* emitida por el Juez Asociado señor Rivera García expone en su pág. 19 que "es imperante que se tomen en consideración los hechos y las realidades fácticas del caso". En contra de toda noción del debido proceso de ley, postula que la minoridad originalmente **alegada** por el Ministerio Público debe ser susceptible de valoración por parte de los foros sentenciadores.

Para sustentar su postura, recurre a diferentes decisiones emitidas por foros federales que, al evaluar exclusivamente el lenguaje estatutario incluido en la ley federal SORNA, entienden que los tribunales pueden emplear un "noncategorical approach" para determinar si una persona

debe inscribirse en el Registro. No obstante, la mencionada

*Opinión de conformidad* pasa por alto que, a diferencia de la

controversia de epígrafe, en dichos casos los tribunales sí

contaban con convicciones o acuerdos de culpabilidad que

consideraban la minoridad de las víctimas.

Por ejemplo, en United States v. Dodge, 597 F.3d 1347,

1349 (11vo Cir. 2010), se indicó:

> Dodge was indicted on three counts of transferring
> obscene material to a minor in violation of 18
> U.S.C. § 1470.1 With no plea agreement, **Dodge
> pleaded guilty to Count I**, which charged that
> between December 1-13, 2006, the then-thirty-
> three-year-old Dodge knowingly transferred obscene
> matter over the Internet to an individual, less
> than sixteen years old". (Negrilla suplida).

Así mismo, en United States v. Mi Kyung Byun, 539 F.3d

982, 984 (9no Cir. 2008), se esbozó:

> **In the plea agreement, Byun admitted** that she
> "induced" Youn Be Seo, a citizen of Korea, "to
> come to Guam by offering to employ [her] at the
> Club ... intend[ing] that during the course of
> [her] employment at the Club ... [she] would engage
> in sexual contact with the Club's customers, and
> perform sexual acts for money," and acknowledged
> that "[a]t the time [Byun] solicited Youn Be Seo
> to come to Guam, and at all times thereafter,
> **[Byun] knew Seo was seventeen years old**".
> (Negrilla suplida).

Como si fuera poco, en United States v. Rogers, 804

F.3d 1233, 1235 (7mo Cir. 2015), se dijo: **"The judge found**

Jane Doe 'very credible' and **concluded that Rogers had**

**committed the Indiana offense of incest.** He also found that

the incestuous relationship was 'not consensual at all,' or

alternatively, if it was consensual, Jane Doe was under

Rogers's custodial authority at the time". (Negrilla suplida). Más allá, en United States v. Berry, 814 F.3d 192, 194 (4to Cir. 2016), se explicó lo siguiente:

> Defendant **pled guilty** in New Jersey state court to **endangering the welfare of a child** in violation of N.J. Stat. Ann. § 2C:24-4(a) (2002) […]. In a memorandum opinion, the court explained that its tier III determination was "based upon description of the conduct underlying defendant's prior sex offense as set forth in the **presentence report**". (Negrilla suplida).

Por último, en United States v. White, 782 F.3d 1118, 1136 (10mo Cir. 2015), se resolvió:

> Mr. White **was convicted of taking indecent liberties with a child** in violation of section 14-202.1 of the North Carolina Code. North Carolina defines taking indecent liberties with a child as either (1) willfully taking or attempting "to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire," or (2) willfully committing or attempting "to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years".(Negrilla suplida).

Como podemos apreciar, en todos estos escenarios se produjo una convicción por un delito en contra de un menor de edad. Eso es muy distinto al caso que tenemos ante nos, pues aquí no se encontró convicto al señor Toro Vélez de ese suceso. Por ello, cuando la *Opinión de conformidad* emitida por el Juez Asociado señor Rivera García justifica la permanencia en el Registro a base de unos hechos que no se corroboraron ante ningún estrado, ya que no existe condena alguna que en efecto reafirme la totalidad de lo aquí denunciado por el Ministerio Público, se trasgrede el texto

de la Ley 266-2004 que claramente exige una **convicción** para poder inscribir. Art. 2 de la Ley Núm. 266-2004, <u>supra</u>.

Por último, el Ministerio Público presenta en su alegato de oposición dos argumentos que, a su entender, sostienen que la comisión del delito de actos lascivos sin minoridad sí es una convicción que mandata la inscripción del convicto en el Registro.

En primer lugar, señala que la persona que comete el delito de actos lascivos contra una persona mayor de edad es un Ofensor Sexual Tipo II, cuya inscripción es mandatoria. Entiende que, como el Art. 2 de la Ley Núm. 266-2004, <u>supra</u>, dispone que los Ofensores Sexuales Tipo II son las "[p]ersonas que resulten convictas por los siguientes delitos <u>o</u> su tentativa <u>o</u> conspiración cuando la víctima fuere un menor de edad: (i) Actos lascivos o impúdicos […]", la minoría solo se exige para aquellos casos en donde la persona incurre en la tentativa o la conspiración del delito de actos lascivos. Manifiesta que este estatuto realizó dos valoraciones importantes: una valoración cuando la persona incurre en el delito en sí mismo y otra valoración cuando la persona incurre en la tentativa del delito o su conspiración. Afirma que es para esos dos últimos escenarios de la tentativa o la conspiración que el Legislador condicionó la inscripción a "cuando la víctima fuere un menor de edad".

Según el Ministerio Público, la inclusión de la conjunción "<u>o</u>", en lugar de la conjunción "**y**", separa la tentativa y la conspiración con el fin de exigir la

inscripción en esos dos escenarios a aquellos que cometen el acto contra menores de edad. Es decir, si una persona incurre en el delito de actos lascivos, no hace diferencia si la víctima es menor o mayor de edad porque la ley requiere su inscripción en el Registro, independientemente de ese elemento. No obstante, si la persona incurre en la tentativa o la conspiración del delito de actos lascivos, habrá que registrarlo únicamente si la víctima es menor de edad. No le asiste la razón.

Este ejercicio de interpretación lingüística realizado por el Ministerio Público parece obviar que, aunque la conjunción "o" es una conjunción disyuntiva que denota diferencia o separación, también puede significar **alternativa** entre dos o más personas, cosas o ideas. Morales v. Marengo, 181 DPR 852, 862 (2011). Ante este escenario, resulta fácil concluir que la intención legislativa detrás de la inclusión de la "o" en la definición de Ofensor Sexual Tipo II era indicar que el elemento de la minoridad **es necesario** cuando hablemos de los delitos cometidos o, **en la alternativa**, cuando solo se hayan materializado sus respectivas tentativas o conspiraciones. En ese sentido, no era posible utilizar la conjunción "y" porque esta se considera una conjunción copulativa. Íd., págs. 862-863. De tal manera que no era posible plasmar: *personas que resulten convictas por los delitos* **y** *su tentativa* **y** *conspiración cuando la víctima fuere un menor de edad*, ya que, como

sabemos, no es posible encontrar a alguien culpable de cometer un delito **y**, al mismo tiempo, ejecutar su tentativa.

Contrario a la posición del Ministerio Público, este análisis obliga a concluir que la persona que comete el delito de actos lascivos contra una persona mayor de edad **no** se considera un Ofensor Sexual Tipo II. La Ley Núm. 266-2004, supra, exige el elemento de minoridad tanto para escenarios en los que se cometa el delito de actos lascivos o, en la alternativa, para cuando solo se materialice su tentativa o conspiración.

El segundo argumento del Ministerio Público sostiene que la Ley Núm. 266-2004, inspirada en la ley federal SORNA, incluye una cláusula residual que obliga la inscripción de todo delito que se considere delito sexual. Asevera que entre los delitos enumerados en el Art. 2 que requieren inscripción se encuentran los *delitos sexuales* en general, sin limitarlo a que las víctimas sean menores de edad. Al respecto, insiste en que la ley define los delitos sexuales como aquellos que tienen "como elemento constitutivo un acto sexual o conducta sexual con otra persona". El Procurador General entiende que, como el delito de actos lascivos implica un acto o conducta sexual contra otra persona, su inscripción debe ser mandatoria. No le asiste la razón.

El Art. 2 de la Ley 266-2004, supra, contiene **definiciones**. Entre las definiciones que incluye este artículo está la definición de "Convicto", "Empleado", "Estudiante", "Estados Unidos", "Ofensor Sexual", "Delito

Sexual", entre otras. Ahora bien, las definiciones contenidas en este artículo son, eso mismo, **definiciones**. No todas constituyen delitos específicos enumerados y algunas guardan un propósito meramente ilustrativo.

Los únicos delitos enumerados en este Art. 2 que imponen el deber de inscripción son aquellos que se encuentran de los incisos ocho (8) al diez (10). Estos son aquellos que se hallan en las tres categorías de ofensores sexuales establecidas por medio de la enmienda de 2011. Esto va a tono con la intención del legislador, puesto que la ley no hace expresión con relación a la codificación de otros delitos que puedan surgir más allá de los ya clasificados. No tendría sentido crear unas categorías de acuerdo con el delito sexual cometido y su grado de severidad, impartirles características distintivas y obligaciones particulares, imponer un tiempo específico para cada una de ellas, en fin, establecer todo un esquema alrededor de las clasificaciones de Ofensor Sexual Tipo I, II y III, para luego sentenciar que pueden haber delitos adicionales a los expresamente calificados que requieran inscripción. Aceptar una teoría de la cláusula residual conllevaría tener que adivinar, por analogía o afinidad, a qué tipo de clasificación correspondería cada uno de los "delitos sexuales" que no están específicamente enumerados e incluidos en la ley del Registro en cuestión.

Por esto, el "delito sexual" al que alude el Procurador General es solo una definición genérica. Esta definición

debe ser utilizada para lograr un pleno entendimiento de la pieza legislativa. No debe interpretarse como un nuevo grupo que requiere la inscripción de cualquier delito que tenga "como elemento constitutivo un acto sexual o conducta sexual con otra persona". Además, si bien SORNA establece el estándar que los estados y territorios de Estados Unidos deben seguir en cuanto al tema del Registro, la ley federal brinda discreción en la forma en que las jurisdicciones lo implementan. Véase, The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,053 (2 de julio de 2008) (en https://www.govinfo.gov/content/pkg/FR-2008-07-02/pdf/E8-14656.pdf).

Independientemente de la interpretación que la *Opinión de conformidad* quiera realizar sobre SORNA, **en Puerto Rico la ley que da vida al Registro es la Ley Núm. 266-2004, supra, y esta es clara y libre de toda ambigüedad.** Por ello, **su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu.** Art. 19 del Código Civil de Puerto Rico, 31 LPRA sec. 5341. En consecuencia, no es correcto concluir que la Ley Núm. 266-2004 tiene una cláusula residual tácita porque la ley federal que la motiva tiene una aparente cláusula residual expresa. Ultimar lo contrario sería incompatible con la palpable intención legislativa detrás de la aprobación del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores.

En resumen, al analizar la Ley el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores,

vigente, junto con la jurisprudencia, entiendo que **procedía retirar el nombre del señor Toro Vélez del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores**. El delito por el cual se declaró culpable (actos lascivos) no figura entre las convicciones que, según las clasificaciones, conllevan inscripción.

Esta postura fue avalada anteriormente en la Opinión de Conformidad de la entonces Jueza Presidenta señora Fiol Matta, a la cual se unió el Juez Asociado señor Feliberti Cintrón, en Placer Román v. ELA y otros, supra. En dicha ocasión se aseveró que la Ley Núm. 266-2004 "no incluye una categoría de Ofensor Sexual para las personas convictas por el delito de actos lascivos cometidos contra una persona mayor de edad". Íd., pág. 837. Tal delito, "cuando la víctima es mayor de edad, no activa la obligación de inscribir al convicto en el Registro". Íd., pág. 838.

De igual manera, en Pueblo v. Hernández García, supra, resolvimos que si un acusado resultó convicto tras una alegación de culpabilidad por un delito que, conforme a las enmiendas introducidas al Registro por la Ley Núm. 243-2011, ya no requiere su inscripción, procede eliminar su información del Registro. En esa ocasión aseveramos:

> [**E**]**l delito por el cual hizo alegación de culpabilidad ya no requiere la inscripción en el Registro**. Además, el peticionario cumplió con su programa de desvío y su causa fue sobreseída, por lo que, como resultado de la reciente enmienda al Art. 3 de la Ley Núm. 243, supra, su nombre hubiera tenido que ser eliminado del Registro de todos modos. **Ante esta situación, no existe base legal para que el señor Hernández García permanezca en**

**el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores de la Ley Núm. 266, supra, según enmendada.** (Negrillas suplidas) Pueblo v. Hernández García, supra, pág. 681.

Por esta razón, en el caso ante nos, como establecimos en Pueblo v. Hernández García, supra, el señor Toro Vélez no debía permanecer inscrito en el Registro por cometer un delito que, al presente, no requiere su inscripción.

                                    IV

Por los fundamentos expuestos, disiento respetuosamente. Correspondía utilizar la oportunidad que representa este caso para, de una vez y por todas, afirmar categóricamente que si el delito por el cual se sentenció al condenado no es uno reconocido expresamente en las tres clasificaciones de ofensores sexuales establecidas en el Art. 2 de la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, actualmente vigente, la inscripción en el Registro no se puede sostener. También debíamos establecer que la mencionada ley requiere de una convicción por determinados delitos, mas no una mera alegación, para generar el deber de registro. Hoy se claudicó a así pautarlo.


                          RAFAEL L. MARTÍNEZ TORRES
                               Juez Asociado